**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---------------------------------------------------------------- x

JOHN S.,[1]                                            :

                                                       :

                              Plaintiff,               :

                                                       :

        v.                                             :        3:24-CV-529 (SFR)

                                                       :

COMMISSIONER OF SOCIAL SECURITY,                       :

                                                       :

                              Defendant.               :

---------------------------------------------------------------- x

**MEMORANDUM & ORDER**

In this social security benefits case, the Administrative Law Judge ("ALJ") found that Plaintiff, John S., was not disabled under the Social Security Act and therefore denied his application for disability insurance benefits. Plaintiff filed this action seeking review of the ALJ's decision. Plaintiff moves to reverse the decision of the Commissioner. ECF No. 15 ("Pl.'s Mem."). The Commissioner moves to affirm. ECF No. 20-1 ("Def.'s Mem."). And Plaintiff filed a reply to the Commissioner's brief. ECF No. 21 ("Pl.'s Reply").[2] I assume familiarity with Plaintiff's medical history. I also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[3] I cite only those portions of the record and the legal standards necessary to explain this ruling.

---

[1] In opinions issued in cases filed under § 405(g) of the Social Security Act, this Court will identify and reference any non-government party solely by first name and last initial in order to protect the privacy interests of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases, ECF No. 3.

[2] Citations are to the page numbers appearing on the parties' briefs rather than to the pagination set by ECF.

[3] Citations to the administrative record, ECF No. 13, appear as "R." followed by the page number appearing in the bottom right-hand corner of the record.

1

For the reasons explained below, Plaintiff's Motion to Reverse is DENIED and the Commissioner's Motion to Affirm is GRANTED.

## I.    THE ALJ'S DECISION

The ALJ found that Plaintiff experiences anxiety disorder and depressive disorder. R. 16. At step three in the sequential analysis, the ALJ found that these impairments "significantly limit [Plaintiff's] ability to perform basic work activities." *Id.* But the ALJ rejected Plaintiff's arguments that his anxiety and depression "equal[] the severity of one of the listed impairments." *Id.* at 17.[4] Proceeding to step four, the ALJ concluded that Plaintiff could not perform any of his past relevant work as a public safety officer in light of his residual functional capacity ("RFC"). *Id.* at 21. The ALJ assessed Plaintiff's functional limitations[5] as follows:

1.    Understanding, remembering or applying information: mild limitation.

2.    Interacting with others: moderate limitation.

3.    Concentrating, persisting or maintaining pace: moderate limitation.

4.    Adapting or managing oneself: mild limitation

*Id.* at 17-18.

The ALJ applied these functional limitations to conclude that Plaintiff possesses the

---

[4] Where, as here, the ALJ concludes at step three that the claimant's impairments fail to meet or equal the severity of one of the listings in the SSA's "Listing of Impairments," the ALJ must move to step four and determine whether, in light of the claimant's impairments, the claimant has the residential functional capacity to perform any of their past relevant work. *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 67-68 (2d Cir. 2025).

[5] An ALJ analyzes four areas of mental functioning: "[1] [u]nderstand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). Each area of mental functioning is ranked on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). A person experiencing a mental disorder is considered disabled if the disorder "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(2)b.

following RFC[6]:

> Claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is able to perform simple, routine tasks with occasional interaction with coworkers, supervisors, and the public.

*Id.* at 18. At step five, the ALJ credited the testimony of a vocational expert, who opined that, based on the ALJ's determination of Plaintiff's RFC, there are jobs in the national economy that Plaintiff could perform. *Id.* at 22.

## II.   <u>STANDARD OF REVIEW</u>

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation and internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schillo*, 31 F.4th at 74 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is a very deferential standard of review." *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025) (internal quotation marks omitted). "Indeed, under the substantial evidence standard, the SSA's determination must be upheld if it is rational and supported by the record, even if the evidence is susceptible to more than one rational interpretation." *Id.* (alterations adopted; internal quotation marks omitted).

---

[6] "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citation and internal quotation marks omitted).

## III.    <u>DISCUSSION</u>

On appeal, Plaintiff argues that the ALJ failed to support the determination of his mental RFC with substantial evidence. First, Plaintiff contends that the ALJ erred in discounting the opinions offered by a treating medical physician and two consultative examiners. Pl.'s Mem. 9-18. Second, Plaintiff maintains that the ALJ erred in discounting his hearing testimony. *Id.* at 20-22. I address each argument in turn.

### A.    **Persuasiveness of the Medical Opinions**

The ALJ considered four opinions from providers who treated or conducted consultations with Plaintiff. Treating provider Dr. Sudharam Idupuganti (a psychiatrist) provided a medical source statement dated July 6, 2020. R. 339-42.[7] Abrah Sprung, Ph.D., met with Plaintiff and conducted a consultative psychiatric evaluation on February 8, 2021. *Id.* at 384-89. John Miller, Ph.D., met with Plaintiff and conducted a consultative psychiatric evaluation on April 11, 2022. *Id.* at 419-23. Licensed Clinical Social Worker Elaine Dolan also submitted a letter describing her visits with Plaintiff from 2017 to March 2021. *Id.* at 495-96.[8] The ALJ also considered the opinions of two State Agency non-treating psychological consultants, who each submitted reports based on their review of Plaintiff's medical records. H. Rozelman, Ph.D., submitted a report dated April 28, 2021. *Id.* at 51-66. E. Gagan, MD, submitted a report dated May 6, 2022. *Id.* at 68-89.

---

[7] Plaintiff's briefing suggests the medical source statement was completed October 26, 2020. Pl.'s Mem. 7. That date appears nowhere within the medical source statement.

[8] Dolan's letter is dated September 30, 2023, which is after the ALJ issued his decision on June 30, 2023. R. 495. The ALJ nonetheless referenced the Dolan letter in reaching his decision, which confirms that the Dolan letter that appears in the record is misdated. R. 21. I need not resolve the actual date of the Dolan letter, however, because Plaintiff does not argue that the ALJ erred in evaluating Dolan's letter.

4

### 1.    Idupuganti

In his medical source statement dated July 6, 2020, Idupuganti opined that Plaintiff had marked limitations as to the following mental activities. With regard to understanding and memory, Idupuganti opined that Plaintiff would be markedly limited in his ability to understand and remember detailed instructions. R. 341. With regard to concentration and persistence, Idupuganti opined that Plaintiff would be markedly limited in carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or near others without being distracted by them; and completing a workday without interruptions from psychological symptoms. *Id.* at 341. With regard to social interactions, Idupuganti opined that Plaintiff would be markedly limited in his ability to interact appropriately with the public. *Id.* at 341.

The ALJ was not persuaded. R. 20. In the ALJ's analysis, the marked limitations in understanding complex information and in concentration identified in Idupuganti's medical source statement were not adequately supported by Idupuganti's observations that Plaintiff was withdrawn, had excessive psychomotor activity, and feared working in a hostile street environment. R. 20. In addition, the ALJ reasoned that Idupuganti's opinion was not consistent with Plaintiff's treatment record as a whole. R. 20.

"Under the SSA, the ALJ must determine whether to credit or reject a particular medical opinion by evaluating two main factors: (1) 'supportability,' i.e., how well the objective medical evidence and explanations given support the medical source's conclusions; and (2) 'consistency,' i.e., how consistent the opinion is with the rest of the record." *Nunez*, 164 F.4th

at 73 (citing 20 C.F.R. § 404.1520c(a), (c)(1)-(2)).[9] Plaintiff contends that the ALJ erred by ignoring the evidence of Plaintiff's significant mental distress in 2020, and by failing to articulate how Idupuganti's "treatment notes were inconsistent with his opinion." Pl.'s Mem. 13. Plaintiff also argues that the ALJ improperly equated "stability" in Plaintiff's conditions with a finding that Plaintiff was no longer experiencing severe impairments. *Id.* at 10-12.

I conclude that the 2022 treatment records offered substantial evidence in support of the ALJ's consistency determination. *See* R. 20. As the ALJ explained, Idupuganti's opinion from July 2020 was belied by Idupuganti's own observations of Plaintiff in 2022. The April 2022 consultation note records Idupuganti's assessment that Plaintiff "has no sustained depression or panic attacks; no suicidal ideation. Affect is appropriate." R. 489. In June 2022, Idupuganti reiterated that Plaintiff "has no sustained depressive symptoms or panic attacks." *Id.* at 488. The ALJ cited these treatment records specifically in his decision.[10] And although the ALJ offered Plaintiff the opportunity to supplement the record to provide an updated medical source statement from Idupuganti based on the visits from 2020 to 2022, Plaintiff— who was represented by counsel before the ALJ—has not done so. *Id.* at 32-33. Because the

---

[9] Because Plaintiff brought his claim after March 27, 2017, the ALJ properly declined to "defer or give any specific evidentiary weight, including controlling weight," to Idupuganti's opinion. 20 C.F.R. § 404.1520c(a); *cf. Rucker v. Kijakazi*, 48 F.4th 86, 92 (2d Cir. 2022) (defining the treating physician rule). Nonetheless, the Second Circuit has suggested that "[c]ases discussing the persuasiveness of a physician's medical opinion under [the treating physician] rule nevertheless seem to us relevant to the persuasiveness determination." *Nunez*, 164 F.4th at 74 n.10. I therefore draw on that prior caselaw where relevant here.

[10] Indeed, the records from Plaintiff's visits with Idupuganti in August and December 2022 are consistent with this positive trajectory. In August 2022, Idupuganti wrote that Plaintiff "has no depressive symptoms or panic attacks." R. 487. In December 2022—the final visit for which records are available—Idupuganti wrote that Plaintiff "is in stable condition with no depressive symptoms. No panic attacks." *Id.* at 487.

later treatment notes were inconsistent with Idupuganti's 2020 opinion, the ALJ was permitted to discount the evidentiary value of the 2020 opinion. *See, e.g.*, *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

Nor did the ALJ err in his analysis of the supportability of Idupuganti's 2020 opinion. Because Idupuganti's 2020 medical source statement did little to explain why Idupuganti checked the various boxes describing the identified limitations, the ALJ was not required to offer a more fulsome analysis. *See Tiffany T. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00626 (TOF) (VAB), 2023 WL 10949091, at *10 (D. Conn. Sept. 1, 2023) ("[C]ourts have found that it is not error for an ALJ to provide a brief assessment of similarly barebones medical opinions."), *report and recommendation adopted*, 2024 WL 1230256 (D. Conn. Mar. 22, 2024). Idupuganti offered only a cursory description of the clinical findings that supported the limitations he identified: he wrote that Plaintiff experienced "withdrawal, excessive psychomotor activity, sad feelings and fears of working in a hostile, street environment." R. 340. I agree with the Commissioner that the ALJ reasonably concluded that these clinical findings did not adequately support a finding that Plaintiff had a marked limitation in his ability to understand complex information or remain on task. *See* Def.'s Mem. 6-7.

Finally, I am not convinced that the ALJ erred by remarking that "this stability has continued to be noted in the claimant's treatment record." R. 19. As Plaintiff observes, *see* Pl.'s Mem. 11, "federal courts have faulted ALJs for making too much out of medical records noting that a claimant's condition is 'stable.'" *Evelyn C. R. v. Kijakazi*, No. 3:22-CV-01288-TOF, 2023 WL 9022641, at *8 (D. Conn. Dec. 31, 2023) (collecting cases); *see also Thornton v. Colvin*, No. 3:13-CV-1558 CSH, 2016 WL 525994, at *9 (D. Conn. Feb. 9, 2016) (rejecting

the premise that "an individual whose medical condition is *stable* cannot be *disabled* by that condition"). Similarly,  the Second Circuit has held that "an ALJ commits legal error in resting his disability determination on 'a one-time snapshot of a claimant's status' because that episode 'may not be indicative of her longitudinal mental health.'" *Colgan v. Kijakazi*, 22 F.4th 353, 362 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019)).

But here, the treatment records support the ALJ's conclusion that Plaintiff's condition had improved significantly with treatment. As the ALJ noted, Plaintiff "told his treating provider in October 2020 that his panic disorder was under control." R. 19. By June 2021, Plaintiff's treatment notes record that he had no anxiety or depression symptoms and was able to engage in everyday activities, including exercise and socializing. *Id.* And by October 2021, "the claimant's treating provider encouraged him to take less Xanax on good days[,] which indicates that his symptoms are controlled to the extent that a reduction in his mediations was warranted." *Id.* Taken together, this information supported the ALJ's assessment that there existed an "overall stability" in the record and that Plaintiff's "symptoms are generally controlled with treatment." *Id.*

In sum, the ALJ's assessment of Idupuganti's opinion was supported by substantial evidence.

### 2.    Sprung

As noted, Plaintiff underwent a consultative examination with Sprung in April 2021. In her report, Sprung opined that Plaintiff would experience moderate to marked limitations in understanding, remembering, or applying complex directions and instructions and in sustaining concentration and performing a task at a consistent pace. R. 388. The ALJ was not persuaded, reasoning that Sprung's opinion was not consistent with her finding that Plaintiff

had a normal mental status. *Id.* at 20. The ALJ also reasoned that Sprung's opinions were not consistent with Plaintiff's treatment record as a whole. *Id.*

For the same reasons that permitted the ALJ to conclude that the Idupuganti opinion was not consistent with the treatment record as a whole, the Commissioner could reasonably conclude that the limitations identified by Dr. Sprung in April 2021 were inconsistent with Plaintiff's improved condition in 2022. Nor am I persuaded by Plaintiff's argument that the ALJ's supportability analysis was inadequate because the ALJ refused to credit Plaintiff's self-reported symptoms as reported to Dr. Sprung.[11] Pl.'s Mem. 14-16. Dr. Sprung's report showed that, according to objective indicia, Plaintiff's attention and concentration, memory skills, and cognitive function were all normal. R. 387. Dr. Sprung also recorded Plaintiff's report of his "significant difficulty focusing and with short-term memory." *Id.* at 386. Apparently crediting these self-reports, Dr. Sprung opined that Plaintiff's anxiety and depression would nonetheless present mild to moderate limitations. *Id*. In analyzing supportability, the ALJ permissibly reasoned that Sprung's opinion was not "properly supported by objective medical evidence." *Beliana M. C. v. Comm'r of Soc. Sec.*, No. 3:21CV00464 (SALM), 2022 WL 596045, at *12 (D. Conn. Feb. 28, 2022). Although a different fact-finder might afford greater weight to a claimant's subjective report of his own symptoms to a consultative examiner, I cannot say that the ALJ clearly erred in declining to accept the limitations identified by Dr. Sprung.

---

[11] The ALJ did not explicitly reference supportability in his review of Dr. Sprung's opinion. Plaintiff does not argue that the ALJ erred in this respect. *See* Pl.'s Mem. In any case, the ALJ adequately analyzed supportability by probing whether Sprung's proffered limitations were "internally inconsistent" with the clinical findings. R. 20.

### 3.    Miller

Plaintiff underwent a consultative psychiatric evaluation on April 11, 2022 with John Miller, Ph.D. R. 419-23. Miller opined that Plaintiff was markedly limited in his ability to interact adequately with supervisors, coworkers, and the public. *Id.* at 422. The ALJ was not persuaded. *Id.* at 20. The ALJ reasoned that Miller's opinion was not supported by Miller's clinical findings. *Id*. Moreover, the ALJ observed that the only evidence of Plaintiff's ability to interact with others came from Plaintiff's own report that he lacked friends. *Id.* at 20. The ALJ nonetheless assessed Plaintiff as experiencing a moderate limitation in his ability to interact appropriately with others. *Id.* at 17.

I find some merit to Plaintiff's contention that the ALJ improperly rejected Miller's opinion concerning interacting with others. *See* Pl.'s Mem. 16-18. The ALJ rejected this opinion after observing that "[t]here is no support for this limitation other than the claimant's self-report of having no friends." R. 20. But as other courts have recognized, "it can be error for an ALJ to discount a medical opinion concerning a mental health impairment simply because it is based on the claimant's subjective reports, or because it is otherwise not supported by objective findings." *David B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-06087 CJS, 2023 WL 6225251, at *14 (W.D.N.Y. Sept. 26, 2023). Indeed, the ALJ failed to consider how a consultative examiner might substantiate their evaluation of social anxiety other than by considering a claimant's self-reported symptoms.

Assuming that the ALJ erred in analyzing supportability, I decline to remand because I agree with the Commissioner that the ALJ reasonably concluded that the limitations identified by Dr. Miller were not consistent with the treatment record as a whole. "Where application of the correct legal principles to the record could lead only to the same conclusion,

10

there is no need to require agency reconsideration." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (citation and internal quotation marks omitted; alterations adopted). In analyzing consistency, the ALJ observed that Plaintiff's "anxiety [had] stabilized to the point that his treating providers have recommended reducing or stopping his Xanax, and that the claimant is engaging in activities including walking his dog in public and socializing." R. 20; *see also id.* at 402 (Plaintiff "talked about his activities including walking his dog, reading books and socializing"); *id.* at 488 (similar). This account finds support in the record. Indeed, around the same time that Plaintiff visited Dr. Miller in April 2022, Dr. Idupuganti's treatment notes report the view that Plaintiff had "no sustained depression or panic attacks; no suicidal ideation. Affect is appropriate." R. 489. I therefore decline to remand to correct any error by the ALJ in analyzing Miller's opinion.

### 4.    State Agency Reviewers

State agency reviewers H. Rozelman, Ph.D., and E. Gagan, M.D. reviewed the consultative examination reports, medical statements, and medical records, summarizing their own opinions in two reports. Each reviewer concluded that Plaintiff experienced no more than moderate functional limitations with respect to each vocational area. The ALJ concluded that these opinions were "somewhat persuasive." R. 21. Plaintiff says the ALJ erred in basing the RFC only on medical opinions from non-examining consultants. Pl.'s Mem. 19. The Commissioner argues that the ALJ adequately explained why—in considering the entire record—the non-examining sources offered more persuasive opinions than those of the treating and consultative experts. Def.'s Mem. 10. I agree.

First, the ALJ did not base the RFC solely on the reports provided by Rozelman and Gagan. The ALJ compared those reports to Plaintiff's testimony during the hearing and

11

Plaintiff's treatment records and concluded that Plaintiff experienced "greater social restrictions" than identified by the non-examining consultants. R. 21. Second, for the reasons I have previously stated, the ALJ did not err in analyzing the entire treatment record and concluding that Plaintiff's symptoms were generally controlled with treatment. *Cf. Estrella*, 925 F.3d at 97 (cautioning against "pick[ing] out a few isolated instances of improvement over a period of months or years and . . . treat[ing] them as a basis for concluding a claimant is capable of working") (internal quotation marks omitted).

### B.    Plaintiff's Subjective Testimony

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 19. Nonetheless, the ALJ was not persuaded by Plaintiff's testimony concerning "the intensity, persistence, and limiting effects of his or her symptoms." *Id*. The ALJ reasoned that these symptoms "were not entirely consistent" with Plaintiff's treatment record as a whole. *Id*.

Plaintiff briefly argues that the ALJ erred in giving insufficient weight to his testimony at the agency hearing concerning the symptoms of his impairments. Pl.'s Mem. 20-22. Although an ALJ must "take the claimant's reports of pain and other limitations into account," the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam); *see also* 20 C.F.R. § 404.1529(c)(4) (requiring ALJ to consider "the extent to which there are any conflicts between [subjective statements regarding symptoms] and the rest of the evidence").

In analyzing Plaintiff's testimony, the ALJ compared Plaintiff's self-reported symptoms with evidence in the record that Plaintiff "was noted to be socializing, exercising, and taking walks with his dog" and treatment notes from April and June 2022 stating Plaintiff had no sustained depressive symptoms or panic attacks. R. 20. "This explanation is sufficient for us to understand how the ALJ determined that [a claimant's] testimony was inconsistent with substantial evidence in the record." *Woods v. Comm'r of Soc. Sec.*, No. 24-945-CV, 2025 WL 938639, at *2 (2d Cir. Mar. 26, 2025) (summary order). I agree with the Commissioner that the ALJ committed no error in his evaluation of Plaintiff's subjective statements, and substantial evidence in the record supports this evaluation.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reverse, ECF No. 15, is DENIED and the Commissioner's Motion to Affirm, ECF No. 20, is GRANTED. The Clerk shall enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

New Haven, Connecticut
August 7, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

13